UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

vs.

LEVENSON MERILUS

Case No. 19-CR-10189-DJC

## GOVERNMENT'S SENTENCING MEMORANDUM

About one year ago, Levenson Merilus pleaded guilty to conspiracy to unlawfully engage in the business of dealing in firearms without a license and making false statements to a federal firearms licensee in order to acquire firearms. *See* Dkt. No. 71. His criminal activity was detected by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") in the spring of 2019; when ATF confronted him, after some initial deflection, he quickly admitted what he had done and yielded the firearm that was still in his possession. After he was charged, he promptly pleaded guilty and was accepted into the RISE program. By all accounts, he fully participated in and successfully completed RISE, obtaining his GED and employment while enrolled in the program, and participating in the restorative justice program.

In recognition of these factors, notwithstanding the seriousness of the defendant's crimes, the government now recommends a 6-month sentence of imprisonment – a significant downward variance from the 24-30 month Guidelines Sentencing Range (GSR) as calculated by Probation – as well as supervised release for two years thereafter. The government further recommends that conditions of supervised release include an associational restriction barring Merilus from contact with his co-defendant Charles Slayden. Slayden – who was more culpable in the scheme, did not immediately admit his role in it, and did not participate in RISE – was sentenced in December to

15 months imprisonment and 3 years of supervised release.   Dkt. No. 126.

### FACTS[1]

In November 2018, Charles Slayden, a Creston Street gang member, asked his longtime friend Levenson Merilus to purchase a gun for Slayden to keep at his home.   Specifically, the suggested arrangement was that Slayden would provide the money to purchase it and would keep it at his home, but it would "technically" be owned by Merilus and Merilus could use it whenever he wanted.   Merilus purchased the firearm as requested on November 23, 2018, and transported it to Slayden's house.   Slayden later informed Merilus that he had sold the firearm.   PSR ¶¶ 37-43.

By no later than February 19, 2019, Merilus willfully entered into an agreement with Slayden to purchase firearms from a federal firearms licensee and then re-sell them for a profit to individuals in Boston.   Neither Slayden nor Merilus was a licensed importer, licensed manufacturer, or licensed dealer of firearms as defined in 18 U.S.C. § 921, and Merilus knew that neither of them was so licensed.   PSR ¶ 8.

As part of this conspiracy, Slayden took orders, and collected payment, for firearms from others.   On four separate occasions in February and March 2019, Merilus – who at that time had a valid MA License to Carry Firearms – and Slayden traveled together to the federally licensed firearms dealer to purchase the firearms.   Slayden directed Merilus which firearms to purchase and provided him with the funds to purchase them.   Merilus purchased the firearms, and disguised the true nature of the transaction by certifying on a Bureau of Alcohol, Tobacco,

---

[1] Because none of the material facts are disputed, the government does not believe that an evidentiary sentencing hearing is necessary.

Firearms, and Explosives Form 4473, Firearms Transaction Record, that he was the actual transferee/buyer of the firearms listed on the subject form, when, in fact, he was not.    PSR ¶ 9.

After the purchase of the firearms from the federally licensed firearms dealer, Slayden paid Merilus a portion of the profit from the anticipated re-sale of the firearms.   Merilus transported the firearms in his car to locations in Boston as directed by Slayden, and provided them to Slayden, for Slayden to distribute to the actual buyers in Boston.   PSR ¶ 9.

In furtherance of the conspiracy, and to avoid detection, Slayden attempted to obliterate the serial number on at least one of the firearms.   On March 9, 2019, one of the dates that Merilus straw purchased firearms for Slayden, a keyword search for "obliterated" was conducted on Slayden's phone.   The next day, Slayden sent Merilus a text message that said "Best ones yet," and attached two photographs of what appeared to be firearm serial numbers which had been obliterated.   PSR ¶ 29.   Accordingly, these firearms could not be traced back to Merilus and Slayden.

After their final attempted purchase of firearms on March 16 was delayed in completion, Merilus returned to the FFL for the purpose of obtaining a refund.   He obtained and cashed the refund check, and then attempted to send the money to Slayden via the "Cash App" mobile phone application.   When the payment would not go through, Slayden directed him to send the money to a different account, and Merilus did so.   In text messages surrounding this sequence of events, to impress on Merilus the urgency of returning the money, Slayden forwarded to Merilus threats that Slayden had purportedly received from a prospective purchaser, to the effect that Slayden had better deliver the purchaser's "order" (the firearm) or return his "bread" (money advanced for that purpose), or else.   PSR ¶ 36.

On March 20, 2019, Slayden suggested to Merilus that they purchase another firearm "for us." PSR ¶ 44. Because of the federal investigation, that purchase never happened. However, a red gun trigger lock was found in Slayden's apartment when a federal search warrant was executed there, indicative that a firearm had once been stored there. PSR ¶ 45.

On April 12, SLAYDEN was arrested, and his phone was seized. It was later searched pursuant to a search warrant, and agents discovered the following among other evidence on the phone:

- A photo dated February 23, 2019 – one of the dates that Slayden and Merilus purchased firearms – depicting the bottom half of someone sitting in the passenger seat of a car, with three guns on their lap. (*See* Exhibit 4.)

- A keyword search from March 19, 2019: "gun stores near me."

- Keyword searches from March 20, 2019: "if someone got caught with my firearm what happens" and "can you buy high capacity firearms in MA"?

PSR ¶ 46. The firearms purchased and re-sold by Merilus and Slayden have not been recovered; or, if they have, they were not able to be traced.

In all, together Merilus and Slayden purchased or attempted to purchase at least 11 firearms.[2]

## DISCUSSION

### I. Sentencing Guideline Calculation

While the U.S. Sentencing Guidelines ("USSG") are advisory and not mandatory, *United States v. Booker,* 543 U.S. 220 (2005), the First Circuit has made clear that "the guidelines still

---

[2] This includes one firearm successfully purchased in November 2018 for joint use, which Slayden ultimately re-sold; eight firearms successfully purchased between February and March 2019, all but one of which were re-sold (the last was retained by Merilus and ultimately seized by ATF); and two firearms purchased in March but then cancelled (such that the defendants never took possession) after a delay in delivery.

play an important role in the sentencing procedure, so that [ ] a court should ordinarily begin by calculating the applicable guideline range." *United States v. Gilman*, 478 F.3d 440, 445 (1st Cir. 2007).

Probation calculates Merilus's base offense level as 12; increases this level by 4 pursuant to USSG § 2K2.1(b)(1)B) because the offense involved between 8 and 24 firearms; increases this level by 4 pursuant to USSG § 2K2.1(b)(4)(B) because some of the firearms' serial numbers were obliterated prior to resale; and decreases this level by 3 pursuant to USSG § 3E1.1 because the defendant promptly accepted responsibility.   Thus, the total offense level is calculated as 17, and the GSR is 24-30 months.   PSR ¶¶ 52-62.   The government concurs with this calculation.

The defendant's objection to this calculation is without merit.   The defendant has objected to the application of the specific offense characteristic regarding obliteration, claiming that it does not apply because the "conspiracy did not involve purchasing firearms that had altered or obliterated serial numbers" and obliteration was not specifically mentioned in the Indictment. Defense Objections 1 and 4, PSR at 26-27.   However, specific offense characteristics need not be mentioned in the Indictment to apply.   Here, the evidence demonstrates that the obliteration was conducted in furtherance of the conspiracy, and that is all that is required.   Paragraph 6 of the Indictment states that the object of the conspiracy was for the defendants "to unlawfully enrich themselves by purchasing firearms from a federally licensed firearms dealer for re-sale and for profit, without being licensed to do so."   Paragraph 12 further alleges that part of the conspiracy was that Merilus transported the firearms to locations directed by Slayden for Slayden to distribute to the actual buyers. The obliteration of the firearms' serial numbers was conducted prior to the firearms re-sale and in connection with their re-sale, to make it more difficult to track where the firearms had come from.   Notably, the obliteration most directly benefited Merilus, whose name

was on the paperwork associated with the purchase of the firearms, making them impossible to trace back to him.   Accordingly, the conspiracy involved firearms with obliterated serial numbers, and the § 2K2.1(b)(4)(B) characteristic properly applies.   The government also notes that this specific offense characteristic was applied in co-defendant Slayden's case.

Thus, the total offense level is properly calculated as 17, and the GSR is properly calculated at 24-30 months.

## II.    Application of the Section 3553(a) Factors

Next, the Court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in § 3553(a)(2).   These factors include the nature and circumstances of the offenses and the history and characteristics of the defendant, and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide for the needs of the defendant.   They also require courts to consider the kinds of sentences available and the GSR.   In this case, these factors point to a sentence of imprisonment of 6 months, and to two years of supervised release including associational restrictions.

### A.    Nature and Circumstances of the Offense; Need for Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment and Deterrence, and Protect the Public

The nature of the offense is exceptionally serious.   This was a conspiracy to unlawfully deal in firearms without a license.   It was not a one-time lapse in judgment.   It continued over the course of two months, and over four separate purchase dates.   Because the object of the conspiracy was substantially completed, multiple firearms have been illegally distributed on the streets of

Boston by the co-defendants, most likely to individuals who are unable to lawfully procure firearms.[3]   They have not been recovered, or, if they have, due to the obliterated serial numbers, they have not been traced.

The scourge of gun violence in Boston is well-documented.   In 2019, there were 191 shooting victims in Boston; in 2020, there were 276.   *See* BPD Crime Data, https://static1.squarespace.com/static/5086f19ce4b0ad16ff15598d/t/5ff37b7f0 e058f15c9d98ef2/1609792383700/Shootins+Weekly+Crime+Overview_+2020+Year+End+4.pd f (last accessed February 8, 2021).   Any sentence in a case such as this must take into account the harms that the proliferation of illegal firearms causes to the community, and the danger that these particular untraceable firearms pose to the community right now.

However, in analyzing the "nature and circumstances of the offense" in this case, the Court should also consider Merilus's role in the offense.   Although not a "minor participant" for Guidelines purposes, Merilus is the less culpable of the two co-defendants.   The scheme was Slayden's idea.   Slayden had the connections to the prospective purchasers and took their "orders" for what to purchase.   Slayden collected their money and provided it to Merilus.   Slayden delivered the guns to the true purchasers.   With the same criminal history score, Slayden was given a sentence of 15 months imprisonment and 3 years of supervised release.   Given Merilus's less culpable role, justice requires a lesser sentence than his co-defendant received.

---

[3] While there is not sufficient evidence of who the firearms were sold to or proof that the *defendant* had reason to believe that his conduct would result in transfer of a firearm to an individual whose possession would be unlawful or who intended to use it unlawfully, and thus no basis to apply USSG § 2K2.1(b)(5), the fact that the defendants were purchasing firearms for half the cost that they re-sold them for on the streets suggests to the *government* that the individuals purchasing the firearms were themselves unable to purchase them lawfully at the FFL.

**B. The History and Characteristics of the Defendant**

As reflected in the PSR, Merilus is a young man with no prior criminal record. Unlike his co-defendant, he is not gang-involved. His family moved to Milton when he was around 12 years old, and in his teenage years he was largely able to avoid the influences that led to Slayden's embarking on this criminal path. Unfortunately, his ongoing friendship with Slayden led him into the criminal activity to which he has pleaded guilty in this case.

Merilus certainly has the potential to be a law-abiding member of society. He has started down that path by taking responsibility for his offenses, pleading guilty, and working hard in the RISE program to obtain his GED, obtain employment, maintain sobriety, and participate in a restorative justice program. The government's recommendation takes these commendable actions into account.

The government's recommendation also takes into account the challenges of serving a sentence during the COVID-19 pandemic, a factor that the Court cited in granting a downward variance in Slayden's sentencing. *See* Dkt. No. 127 at 5.

The government recognizes that there is an argument to be made – that the defendant will no doubt make – that any term of imprisonment does not make sense considering the many strides that the defendant has made over the past year in rebuilding his life and setting it on the right direction, and considering the backdrop of the pandemic. Although this is a reasonable argument, the government believes that not imposing a term of imprisonment for the very serious conduct here sends the wrong message to Merilus and to the community, and that a 6-month period of imprisonment is necessary to adequately punish and deter such conduct and promote respect for the law. Such a sentence would send a message that although model behavior after being confronted with one's crimes can significantly decrease one's ultimate punishment, it does not

permit one to evade punishment altogether.

Finally, the government's recommendation takes into account that the defendant has essentially already successfully completed one year of supervised release, and therefore the government believes that an additional two years of supervised release will be sufficient to provide Merilus with the support he needs to continue on the new positive path that he has set for himself.

Given the above, a sentence of 6 months imprisonment, with two years of supervised release, is sufficient, but not greater than necessary, to accomplish the goals of sentencing set forth in § 3553(a).

### C. Conditions of Supervised Release: Reasonable Associational Restrictions Are Appropriate In This Case

The government also requests that, during the term of his supervised release, the defendant be restricted from associating with his co-defendant Charles Slayden (set forth in Attachment A) without the express permission of his Probation Officer.   This is a continuation of his conditions of pretrial release.   The proposed associational restriction will aid Merilus's rehabilitation by reducing his opportunities for further crime, and by eliminating any expectation from Slayden or anyone else in his old neighborhood that he will further engage in criminal activities.   Slayden has similarly been ordered not to associate with Merilus during his term of supervised release.

### CONCLUSION

Merilus has done all the right things since he was confronted with his crimes – admitting what he did, taking responsibility, and working hard to get his life back on track.   It very well may be that a term of imprisonment is not necessary to deter him from future crimes.   But the rehabilitation and deterrence of the defendant are not the only factors to consider in determining a sentence.   The punishment of the defendant, general deterrence, and promoting respect for the law

must be considered as well.   In this particular case, the dangerous nature of the offense and the scale of it, involving the purchase or attempted purchase of at least ten firearms, at least seven of which were sold onto the streets of Boston, requires some period of imprisonment.

A sentence of 6 months incarceration, along with 2 years of supervised release including an associational restriction, is necessary in this case to reflect the seriousness of the offense of conviction, to promote respect for the law, to adequately punish Merilus for his criminal conduct, to deter him and others from offending in the same way again, and to protect the public.   This sentence would be sufficient, but not greater than necessary, to reflect the seriousness of the offense and the goals of sentencing.

For the foregoing reasons, and those to be articulated at the sentencing hearing, the government respectfully recommends that this Court impose this sentence.

Respectfully submitted,

UNITED STATES OF AMERICA,

By its attorney,

ANDREW E. LELLING
United States Attorney

*/s/ Elianna J. Nuzum*
Elianna J. Nuzum
Assistant United States Attorney
John Joseph Moakley U.S. Courthouse
One Courthouse Way, Suite 9200
Boston, MA 02210
elianna.nuzum@usdoj.gov
617.748.3251

Dated: February 8, 2021

## **CERTIFICATE OF SERVICE**

Undersigned counsel certifies that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Elianna J. Nuzum*
Elianna J. Nuzum
Assistant United States Attorney

Dated: February 8, 2021

## <u>ATTACHMENT A</u>

## ASSOCIATIONAL RESTRICTION

## U.S. v. Levenson Merilus, 19-CR-10189-2-DJC

During the period of supervised release, the defendant is prohibited from contacting, or being in the company of his co-defendant Charles Slayden, without the prior approval of the U.S. Probation office.